**\*\*E-filed 4/18/11 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RINGCENTRAL, INC.,

        Plaintiff,

v.

BILL QUIMBY, et al.,

        Defendants.

_____/

No. C 09-2693 RS

**ORDER GRANTING MOTION TO VACATE DEFAULT JUDGMENT AND SET ASIDE DEFAULT**

## I. INTRODUCTION

Plaintiff RingCentral, Inc. obtained a default judgment of $432,888.29 against TollFreeNumbers.Com, Inc. and its principal, Bill Quimby, representing $200,000 in statutory penalties for each of two Lanham Act violations, plus attorney fees and costs. Defendants now move to vacate the default judgment and to set aside the underlying entry of default. In light of defendants' showing that their failure to respond to the complaint did not reflect a bad faith attempt to manipulate the legal process, and given a serious question as to whether imposition of the full statutory penalties would be warranted outside the default context, the motion will be granted.

## II.  BACKGROUND

RingCentral alleged, and for purposes of entering default judgment established, that it owns the marks "RingCentral" ("the Mark") and "1800RingCentral" ("the 800 Mark"), both of which are registered with the U.S. Patent and Trademark Office.  It turns out that the original registration of the Mark, dating to 1994, was cancelled in 2006, as a result of RingCentral's failure to file appropriate documentation with the PTO.  RingCentral, however, re-registered the Mark in 2007, and that registration remains in effect.  Moreover, although the original registration had been cancelled several years before this action was filed, it was in effect in 2003, when defendants registered the domain names www.800ringcentral.com and www.1800ringcentral.com.

RingCentral alleged that defendants used the www.800ringcentral.com and www.1800ringcentral.com domains to divert potential customers to their own website at www.tollfreenumbers.com.  In adopting the magistrate judge's Report and Recommendation to enter default judgment, the Court found that defendants had thereby infringed the Mark,[1] subjecting them to liability for statutory damages under the Lanham Act.

Defendants contend that, contrary to the allegations of the complaint, they are not direct competitors to RingCentral.  Defendants assert that their sole business is assisting customers in locating and obtaining toll free "vanity" telephone numbers, which "spell[] out a word identifying the name of, or the goods or services provided by, the holder[s] of the number[s]."  Defendants do not provide any "telecommunications services," and instead refer their customers to other entities, including RingCentral, for such services.  Defendants claim that the sole reason they registered the www.800ringcentral.com and www.1800ringcentral.com domains in the first instance was to further the business relationship they then believed they were developing with RingCentral under its "Affiliate program." According to defendants, they never actually used the domains for any purpose, and did *not* forward any site visitors to their own website.

---

[1]  As noted in a prior order, while the background allegations of the complaint refer to the registration of the 800 Mark, the charging allegations are limited to the Mark.  Although the Report and Recommendation adopted by the Court refers to infringement of "trademarks" in the plural, at this juncture it need not be determined whether RingCentral can establish infringement of the 800 Mark, which was not registered until some years after defendants registered the domain names.

When defendants were served with summons and complaint in this action, Quimby sent a letter to the Court, on TollFreeNumbers.Com letterhead, that began with the sentence, "I, Bill Quimby, am responding to the law suit of RingCentral vs Bill Quimby and TollFreeNumbers.com (Case CV 09 2693)." The letter asserted that this action was frivolous, and demanded that RingCentral be required, as a symbolic gesture, to reimburse 88 cents in postage costs. Under Quimby's signature on the letter, the words "Bill Quimby, President of TollFreeNumbers.com" are typed.

The letter was docketed by the Clerk of the Court as an answer by both Quimby and TollFreeNumbers.com, but as the then-presiding magistrate judge later ruled, could not serve as an appearance by the corporation. When defendants both failed to respond to an order to show cause, their defaults were entered, followed by the default judgment now at issue.

### III. DISCUSSION

#### A. Personal Jurisdiction

Defendants contend first that the judgment should be vacated because they were not subject to personal jurisdiction in this forum. A judgment entered in the absence of personal jurisdiction is void, and a court would lack discretion to decline to set it aside. *See Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.,* 4 F.Supp.2d 931, 934 (C.D.Cal.1997) ("where the court lacked personal jurisdiction over the defendant or the requirements for effective services were not satisfied, the default judgment is void and must be vacated."). As to TollFreeNumbers.com, however, defendants have presented no facts or legal authority sufficient to call into question the analysis of the Report and Recommendation adopted by the Court that personal jurisdiction is appropriate under the "effects test" of *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).

As to Quimby, defendants argue that the Report and Recommendation "failed to notice" that the letter he sent was on the letterhead of TollFreeNumbers.com and signed in his "sole capacity" as its president. Defendants argue that the letter therefore cannot serve as a general appearance by Quimby individually that would support jurisdiction. The text of the letter, however, does not permit such a fine distinction. As noted, it begins with the sentence, "I, Bill Quimby, am

3

responding . . . ." That sentence also makes clear that Quimby understood he was an individual defendant to the suit. Throughout the letter, Quimby uses personal, singular pronouns repeatedly. Among other things, Quimby stated, "I am asking they pay me $0.88," (emphasis added), thereby affirmatively invoking the jurisdiction of the Court. While there is a reference to Quimby's corporate title below his signature, the signature block is not in a form clearly indicating that the corporation is the intended signatory, with the individual signing only on behalf of the entity. Under these circumstances, there is no basis to conclude that Quimby did not make a general appearance as an individual defendant.

### B. Good Cause

Rule 55(c) of the Federal Rules of Civil Procedure provides that a court may set aside an entry of default for "good cause shown." This "good cause" standard also governs vacating a default judgment under Rule 60(b). *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696 (9th Cir.2001). A good cause analysis requires consideration of three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *Id.*

Crucially, however, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *TCI Group,* 244 F.3d at 695-96. The Ninth Circuit recently emphasized that the "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." *U.S. v. Signed Personal Check No. 730 of Yurban S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010). *See also TCI Group*, 244 F.3d at 695-98.

Here, RingCentral argues that defendants made an intentional, calculated, decision not to respond to the complaint (other than by Quimby's letter) and that they ignored the Court's order to show cause with full awareness of the potential consequences. For their part, defendants do not deny that their choice to ignore the litigation was intentional, but assert that they believed that by

4

not resisting RingCentral's efforts to gain control of the www.800ringcentral.com and www.1800ringcentral.com domain names, there would be nothing of substance left to be litigated.

Defendants plainly did not act wisely, or even reasonably, but they have made an adequate showing that they had no "intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process," *TCI Group,* 244 F.3d at 697.  While defendants certainly were on notice that RingCentral was seeking monetary damages, their explanation that they believed that possession of the domain names was "what the lawsuit was about," is plausible, and from the perspective of layperson, understandable.[2]  As foolish as it may have been for defendants to believe that they could ignore this action without risking serious financial consequences, there is no indication that they did so out of any effort to gain an advantage or to delay the inevitable.

At this point the viability of any to defense to infringement is unclear, though defendants' lack of use of the domain names, if proven, might be relevant.  Even assuming defendants will not escape at least some liability, however, there is significant reason to believe that the result after a determination on the merits may differ significantly from the judgment by default.  The Report and Recommendation adopted by the Court premised the imposition of the maximum statutory penalty in part on a presumption based on the failure to defend.  The penalty was also selected in the absence of a full factual record as to circumstances and extent of defendants' use of the Mark.[3]  As the burden to show the existence of a potentially meritorious defense, "is not extraordinarily heavy," *TCI Group*, 244 F.3d at 700, this factor also weighs in favor of granting defendants' motion.

---

[2] RingCentral points out that defendants did not act upon receiving the Report and Recommendation that made clear that a substantial monetary judgment might be entered against them, and further asserts that several other lawsuits against defendants have resulted in monetary judgments by default.  Defendants' failure to appreciate the significance of such judgments until a plaintiff took steps to enforce one of them reflects extremely poor judgment and insufficient respect for the judicial system, but it is not inconsistent with their expressed understanding that the goal of the litigation was to obtain control of the domain names.

[3] RingCentral's motion for default judgment sought to establish an entitlement to lost profits in an amount substantially greater than the statutory damages awarded.  It is at least theoretically possible that it will succeed in obtaining a larger judgment when the matter is decided on the merits.

5

Finally, "[t]o be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. While RingCentral has complained of the costs it incurred in pursing default judgment, it has not otherwise identified any cognizable prejudice it will suffer from the default being set aside. Accordingly, defendants' motion will be granted.

### C. Conditions

Rule 60 permits a court to impose "just terms" on any order setting aside a judgment. RingCentral requests that it at a minimum be awarded the fees and costs it incurred in obtaining the default judgment, in attempting to enforce it, and in opposing this motion. Although defendants' conduct here was not culpable in the sense that it precludes setting the default aside, it did unnecessarily and unfairly impose additional burdens on RingCentral. The Court previously concluded that RingCentral reasonably incurred $32,096.50 in attorney fees in bringing this action and obtaining default judgment, based on the fee application made in conjunction with the motion to enter default judgment. Within 15 days of the date of this order, RingCentral may submit a revised fee application, limited to the fees incurred specifically in connection with bringing the motion for default judgment. Within 10 days thereafter, defendants may file a response stating any objections they may have to the amount claimed. The Court will thereafter set the amount of attorney fees to be awarded to RingCentral as a just condition of setting aside the default judgment and underlying default. RingCentral's request that it be permitted to recover fees and costs incurred in attempting to enforce the judgment and in opposing this motion is denied.

IV. CONCLUSION

Defendants' motion to vacate the default judgment and to set aside the underlying defaults is granted. The Court shall set the amount of attorney fees to be awarded to RingCentral upon receipt of the parties' submissions as specified above. The parties shall appear for a Case Management Conference on May 12, 2011 at 10:00 a.m., with a joint Case Management Conference Statement to be submitted one week in advance.

IT IS SO ORDERED.

Dated: 4/18/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE